UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

TENET HEALTHSYSTEM NORTH SHORE, INC. d/b/a North Shore Medical Center – FMC Campus, as successor by merger to FMC Acquisition, Inc. d/b/a Florida Medical Center, a Florida corporation; TENET GOOD SAMARITAN, INC., d/b/a Good Samaritan Medical Center, a Florida corporation; TENET ST. MARY'S, INC., d/b/a St. Mary's Medical Center, a Florida corporation; and WEST BOCA MEDICAL CENTER, INC., d/b/a West Boca Medical Center, a Florida corporation,

                Plaintiffs,

v.

CAYMAN ISLANDS NATIONAL INSURANCE COMPANY LTD.,

                Defendant.

## COMPLAINT

Plaintiffs, TENET HEALTHSYSTEM NORTH SHORE, INC. d/b/a North Shore Medical Center – FMC Campus, as successor by merger to FMC Acquisition, Inc. d/b/a Florida Medical Center ("NSMC"), TENET GOOD SAMARITAN, INC., d/b/a Good Samaritan Medical Center ("GSMC"), TENET ST. MARY'S, INC., d/b/a St. Mary's Medical Center ("SMMC"), WEST BOCA MEDICAL CENTER, INC., d/b/a West Boca Medical Center ("WBMC"), (collectively, the "Plaintiff Hospitals"), hereby file this Complaint against CAYMAN ISLANDS NATIONAL INSURANCE COMPANY LTD. ("CINICO"), for compensatory damages, declaratory relief, pre-judgment interest, post-judgment interest, attorney's fees, costs and such other relief as set forth herein as follows:

## I. Nature of the Action

1. The Plaintiff Hospitals seek redress against CINICO for CINICO's failure to pay the Plaintiff Hospitals the full amount owed for services rendered by the Plaintiff Hospitals to those patients covered by insurance issued by CINICO in violation of its contractual obligations.

## II. Parties, Jurisdiction and Venue

1. Plaintiff NSMC is a Florida corporation with a principal place of business in Florida. Specifically, NSMC operates hospitals in Miami, Florida and Fort Lauderdale, Florida.

2. Plaintiff GSMC is a Florida corporation with a principal place of business in Florida. Specifically, GSMC operates a hospital in West Palm Beach, Florida.

3. Plaintiff SMMC is a Florida corporation with a principal place of business in Florida. Specifically, SMMC operates a hospital in West Palm Beach, Florida.

4. Plaintiff WBMC is a Florida corporation with a principal place of business in Florida. Specifically, WBMC operates a hospital in Boca Raton, Florida.

5. CINICO is the government-owned insurance company organized and existing under the laws of the Cayman Islands, and it maintains its principal place of business at Cayman Centre, First Floor, Dorcy Drive, Airport Road, George Town, Grand Cayman, Cayman Islands.

6. The claims asserted herein arise from visits by CINICO Insureds to the Plaintiff Hospitals in Florida, services rendered by the Plaintiff Hospitals to CINICO Insureds in Florida and/or communications and representations directed by CINICO to the Plaintiff Hospitals in Florida.

7. Moreover, on information and belief, CINICO regularly directs CINICO Insureds to seek treatment from medical providers in Florida.

8. This Court has personal jurisdiction over CINICO because CINICO has transacted business in the State of Florida and has purposely availed itself of the privileges and benefits of Florida's laws. Moreover, CINICO contracted to insure persons, property or risks located within Florida (§48.193(1)(d), Fla. Stat.), breached a contract in Florida (§48.193(g), Fla. Stat.), engaged in unauthorized transactions of insurance in Florida (§626.906, Fla. Stat.) and engaged in substantial and not isolated activity within Florida (§48.193(2), Fla. Stat.).

9. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as there exists complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. By way of example, the amount in controversy for NSMC is in excess of $600,000. Additionally, where at least one named plaintiff satisfies the amount-in-controversy requirement of 28 U.S.C. § 1332, a federal court sitting in diversity may exercise supplemental jurisdiction over additional plaintiffs in the same case or controversy pursuant to 28 U.S.C. § 1367.

10. Venue in this judicial District is proper pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred within this District. Alternatively, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because there is no other district in which this action may otherwise be brought and Defendant is subject to the Court's personal jurisdiction. Moreover, venue is proper because the Plaintiff Hospitals assert the same right to relief, based on similar series of transactions or occurrences, and the issues raised by the Plaintiff Hospitals present common questions of law or fact.

### III. Factual Allegations

11. CINICO is the national insurance company of the Cayman Islands, which provides private healthcare coverage to Cayman Islands government employees, pensioners and

other Cayman Islands residents and their dependents. The patients covered by insurance plans issued by CINICO are referred to herein as "CINICO Insureds."

12. Certain CINICO Insureds have experienced medical conditions or circumstances that required them to receive treatment at the Plaintiff Hospitals.

13. Before treating the CINICO Insureds, the Plaintiff Hospitals obtained authorizations from CINICO to provide the healthcare goods and services at issue in this case.

14. CINICO made representations and promises to the Plaintiff Hospitals that they would reimburse the Plaintiff Hospitals for the medical care provided to the CINICO Insureds and made other assurances that led the Plaintiff Hospitals to believe that they would be paid for the goods and services provided.

15. The Plaintiff Hospitals rendered the required medical care to the CINICO Insureds.

16. Many of the CINICO Insureds at issue in this case required inpatient care that was fully authorized by CINICO.

17. While the CINICO Insureds were being treated by the Plaintiff Hospitals, CINICO had the ability to conduct, and in some cases did conduct, concurrent reviews of the accounts of the CINICO Insureds (the "Patient Accounts") to determine, prior to discharge, whether the medical care being provided to the CINICO Insureds was appropriate.

18. The Plaintiff Hospitals' utilization management departments also offered to provide CINICO any information they needed to evaluate the appropriateness of the medical care being provided to the CINICO Insureds while the patients were still admitted at the Plaintiff Hospitals.

19. After the CINICO Insureds were discharged and/or other services rendered, the

Plaintiff Hospitals submitted timely invoices to CINICO for the medical treatment and care rendered to the CINICO Insureds.[1] CINICO failed to timely pay the full amount owed to the Plaintiff Hospitals for the medical treatment and care rendered to the CINICO Insureds.

20. CINICO has represented that it is entitled to a discount pursuant to certain contracts negotiated by and between preferred provider organization networks (collectively referred to as the "Brokered PPOs") and the Plaintiff Hospitals. Specifically, CINICO has represented that it is a participant in Care Management Network ("CMN").

21. The Plaintiff Hospitals are parties to a Provider Services Agreement with CMN (the "PPO Contract"), a copy of which is attached as Exhibit A hereto (exhibits to contract omitted).

22. Brokered PPOs contract and negotiate discounts for the reimbursement of medical treatment and care including goods and services with medical providers, like the Plaintiff Hospitals, thereby creating a "network" of providers. Providers benefit from the contracts with Brokered PPOs by, among other things, receiving a volume of patients through the Brokered PPO and/or prompt payment of their claims for the provision of medical treatment and care. Brokered PPOs in turn, sell access to the network of medical providers to insurance companies or other payors, like CINICO, who agree to abide by the terms and conditions of the PPO Contract.

23. In order to be eligible to receive the discounted reimbursement rates negotiated in the PPO Contract, however, the payor must comply with certain requirements. For example:

   a. The payor must provide its members with identification cards or other notification that clearly indicate that the payor legitimately has access to the PPO Contract and is entitled to pay claims at the discounted rates. (PPO Contract ¶ 3.1);

---

[1] The invoices are not attached hereto due to the confidentiality of patient health information contained therein. They will be produced to CINICO in discovery pursuant to a HIPAA-qualified protective order.

b. The payor must remit payment of the contractual amount within 30 days of receiving the claim from the provider (PPO Contract ¶ 4.1);

c. If the payor wishes to contest a claim, it must do so in writing, including a statement of the reasons for contesting the claim, within seven (7) business days of receiving the claim from the provider (*id.*); and

d. Even if the payor objects to a claim, it must still remit 95% percent of the contractual amount as an interim payment within 45 days, and the balance within 90 days, of receiving the claim from the provider. (*id.*).

24. If the payor fails to comply with these requirements, it is not entitled to the negotiated or discounted reimbursement rate for the Plaintiff Hospitals' services and must pay a higher, non-discounted rate.  (PPO Contract ¶¶ 3.1, 3.6)

25. CINICO has failed to comply or otherwise remit payments in accordance with the terms of the PPO Contract by, without limitation:

a. Failing to provide the required identification and notice that CINICO legitimately had access to any PPO Contract and was entitled to any contractual discount as required by the PPO Contract;

b. Failing to timely pay uncontested claims as required by the PPO Contract;

c. Failing to timely contest claims in writing as required by the PPO Contract;

d. Failing to timely remit interim payments on contested claims which remained pending as required by the PPO Contract; and

e. Failing to timely remit the remaining balances on contested claims which remained pending as required by the PPO Contract.

26. As a result of CINICO's failure to comply with the terms of the PPO Contract, it is not entitled to any discount from the Plaintiff Hospitals' charges for the medical treatment and care rendered and must pay those charges in full. (PPO Contract ¶¶ 3.1, 3.6, 4.1)

27. In each instance, the Plaintiff Hospitals delivered an invoice to Defendant seeking the Plaintiff Hospitals' full billed charges for the medical treatment and care including goods and services rendered to the CINICO Insureds. Due to patient privacy and confidentiality considerations, the Plaintiff Hospitals do not attach hereto the invoices submitted to Defendant.

28. As a direct and proximate result of Defendant's failure to pay the amounts owed, the Plaintiff Hospitals have retained the law firm of Lash & Goldberg LLP and are obligated to pay it a reasonable fee for its services.

29. The Plaintiff Hospitals have performed all of their material obligations, and all conditions precedent to the institution and maintenance of this action have been satisfied, fulfilled or otherwise waived.

## COUNT I
## BREACH OF THIRD-PARTY BENEFICIARY AGREEMENT

30. The Plaintiff Hospitals repeat and reallege all the allegations in paragraphs 1 through 30 as if fully set forth in this Count.

31. An assignment of benefits authorizing the Plaintiff Hospitals to seek payment from patients' health insurance, CINICO, was executed by the CINICO Insureds.[2]

32. On or before the Plaintiff Hospitals rendered services to the CINICO Insureds, CINICO contracted to provide health care coverage to the CINICO Insureds.

---

[2] The assignments are not attached hereto due to the confidentiality of patient health information contained therein. They will be produced to CINICO in discovery pursuant to a HIPAA-qualified protective order.

33. It was the intent of the CINICO Insureds and CINICO that the health insurance agreements primarily and directly benefit health care providers as a class of which the Plaintiff Hospitals are members.

34. Plaintiff Hospitals are third-party beneficiaries to the CINICO Insureds/CINICO health insurance agreements allowing the Plaintiff Hospitals to bring this action against CINICO.

35. At the time the Plaintiff Hospitals rendered services to the CINICO Insureds, CINICO Insureds were insureds or covered dependents of CINICO health insurance plans. Copies of the insurance contracts and/or policies are not within the Plaintiff Hospitals' possession or control. Upon information and belief, CINICO has within its possession, custody and/or control copies of the contracts and/or policies at issue or a substantially similar sample of the type of contract and/or policy(s) in effect at the time and place at issue.

36. CINICO has claimed that it is entitled to discounts pursuant to the PPO Contract with CMN.

37. CINICO has materially breached its obligations pursuant to the PPO Contract by, among other breaches:

   a. Failing to properly and timely cause the CINICO Insureds to identify that they were eligible for a discounted rate pursuant to the PPO Contract;
   b. Failing to pay the contracted rate for services rendered;
   c. Failing to make payments within the contractually prescribed time periods;
   d. Failing to provide timely written notice that it was contesting claims and the bases therefor;
   e. Failing to make timely interim payments (95% of the contracted rate) for all contested claims; and/or

      f.    Failing to timely pay the balances for contested claims.

38. Once CINICO has verified the CINICO Insured's eligibility and authorized services to the Plaintiff Hospital, CINICO is obligated to pay for said services. (PPO Contract ¶ 3.1)

39. As a result of CINICO's failure to comply with the terms of the PPO Contract, CINICO is not entitled to contractual discounts and is responsible for payment of the Plaintiff Hospitals' full billed charges and must pay those charges in full.

40. As a direct and proximate result of CINICO's material breaches, the Plaintiff Hospitals have suffered damages in an amount to be proven at trial.

## COUNT II
## PROMISSORY ESTOPPEL

41. The Plaintiff Hospitals repeat and reallege all the allegations in paragraphs 1 through 30 as if fully set forth in this Count.

42. In the alternative, and with respect to each of the Patient Accounts, CINICO made representations to the Plaintiff Hospitals that the CINICO Insureds had insurance coverage, that the treatment rendered by the Plaintiff Hospitals was authorized, that CINICO would be responsible for payment of the charges associated with the goods and services rendered by the Plaintiff Hospitals to the CINICO Insureds, and that the Plaintiff Hospitals would be reimbursed for their services.

43. The Plaintiff Hospitals reasonably relied on said representations to their detriment.

44. CINICO thereby induced the Plaintiff Hospitals to render medical care to the CINICO Insureds.

45. CINICO failed to fully pay for the benefits provided, however, either by (a) underpaying the claims, (b) failing to pay the claims in accordance with requirements to qualify for a contractual discount, and/or (c) failing to pay the claims entirely.

46. Injustice can be avoided only by enforcing CINICO's promises to pay in full for the services rendered by the Plaintiff Hospitals to the CINICO Insureds.

47. As a direct and proximate result of CINICO's actions and omissions, the Plaintiff Hospitals have suffered damages in an amount to be proven at trial.

## COLLECTIVE PRAYER FOR RELIEF

WHEREFORE, the Plaintiff Hospitals respectfully ask the Court to enter judgment against CINICO and award the Plaintiff Hospitals the following relief:

a. Damages in an amount to be proven at trial;

b. Pre-judgment and post-judgment interest; and

c. Such other and further relief at law or in equity that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff Hospitals demand a jury trial on all issues triable as a matter of right by jury.

Respectfully submitted,

**LASH & GOLDBERG LLP**
Miami Tower, Suite 1200
100 Southeast Second Street
Miami, Florida  33131
Phone:       305-347-4040
Facsimile:   305-347-4050
*Attorneys for the Plaintiff Hospitals*

By:   /s Alan D. Lash
     **ALAN D. LASH**
     Florida Bar No. 510904
     alash@lashgoldberg.com
     **JUSTIN C. FINEBERG**
     Florida Bar No. 0053716
     jfineberg@lashgoldberg.com
     **GREG J. WEINTRAUB**
     Florida Bar No. 0075741
     gweintraub@lashgoldberg.com

Dated this 20th day of January, 2015.